IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DAVE BARRETT and CLEAN HARBORS ENVIRONMENTAL SERVICES, INC., | ) ) ) | |
| Plaintiffs, | ) ) | 7:07CV5014 |
| vs. | ) ) | ORDER |
| RHODIA, INC., | ) ) | |
| Defendant. | ) ) | |

This matter is before the court on the defendant's Motion *in Limine* (Filing No. 77) and the plaintiffs' Motion *in Limine* (Filing No. 82).[1] These motions seek to exclude certain evidence related to events which took place at Clean Harbors Environmental Services, Inc.'s (Clean Harbors) facility in Kimball, Nebraska on June 27, 2003. The defendant seeks to exclude evidence concerning the death of Craig Wheeland and legal action by his estate against the defendant. The plaintiffs seek to exclude evidence concerning the lack of air monitoring and use of respirators in Clean Harbors' facility. The motions are discussed separately below.

BACKGROUND

This case arises from the collapse of the plaintiff Dave Barrett on June 27, 2003. *See* Filing No. 19 - Second Amended Complaint. The Second Amended Complaint alleges the following facts. Mr. Barrett was employed by Clean Harbors as an ash technician. *Id.* ¶ 3. As part of the ash fixation process, Mr. Barrett worked with 55 gallon drums of solid phosphorus pentasulfide ($P_2S_5$). *Id.* ¶ 3. The $P_2S_5$ drums were manufactured and sold to Clean Harbors by the defendant. *Id.* ¶ 4. A risk associated with $P_2S_5$ drums is the production of hydrogen sulfide, an odorless, colorless, lethal gas, created when water combines with the $P_2S_5$. *Id.* ¶ 5. The $P_2S_5$ drums were sold in 1998 without a warning

---

[1] On December 21, 2007, this matter was transferred from Chief Judge Joseph F. Bataillon to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c) and consent of the parties. **See** Filing No. 35.

about the risk related to condensation, a risk then-known to the defendant.  *Id.* ¶ 6.  On June 27, 2003, a $P_2S_5$ drum was opened in Mr. Barrett's vicinity.  *Id.* ¶ 7.  Unknown to Mr. Barrett or his co-workers, condensation created hydrogen sulfide gas in the drum.  *Id.* ¶ 8. Mr. Barrett was exposed to the hydrogen sulfide gas causing him injuries.  *Id.*  Based on these facts, the plaintiffs initially alleged claims for negligence, strict liability and loss of consortium.  However, the plaintiffs have voluntarily dismissed the negligence claim.  **See** Filing No. 63.  The plaintiffs allege the defendant is strictly liable for Mr. Barrett's injuries by reason of the defective design, manufacture and assembly of the drum and based on the defendant's failure to provide adequate warnings to foreseeable users of the drums. **See** Filing No. 19 - Amended Complaint ¶¶ 12-13.  Clean Harbors claims an interest in this matter for subrogation of benefits paid pursuant to the Nebraska Workers' Compensation Act, Neb. Rev. Stat. § 48-118.  **See** Filing No. 19 - Amended Complaint ¶ 1.

      The defendant denies liability.  **See** Filing No. 12 - Answer ¶ 27.  The defendant alleges Mr. Barrett assumed the risks associated with his responsibilities at Clean Harbors and he fully understood those risks.  *Id.* ¶¶ 19-27.  In addition, the defendant alleges the plaintiffs misused the products provided by the defendant.  *Id.*  In support of these allegations, the defendant provides the following facts.  **See** Filing No. 88 - Brief p. 2-5. In 1997, Clean Harbors began using $P_2S_5$ in its ash fixation process and was immediately aware through experience that when a drum of $P_2S_5$ is opened, hydrogen sulfide gas may form.  **See** Filing No. 89 - Ex. 2 Magers Depo. p. 10-12; Ex. 1 June 20, 1997 Report.  In addition, the original Material Safety Data Sheet (MSDS) provided to Clean Harbors, in 1997, specifically warned about the danger of $P_2S_5$ reacting with water or acids to produce hydrogen sulfide gas.  **See** Filing No. 84 - Ex. 1 Dec. 18, 1995 MSDS p. 1.[2]  Initially, Clean Harbors monitored for the presence of hydrogen sulfide when opening drums of $P_2S_5$ because of the hazards associated with it.  **See** Filing No. 89 - Ex. 2 Magers Depo. p. 12-13, 30.  The ash fixation crew was aware of the hazards of $P_2S_5$, and that Clean Harbors "always required monitoring."  *Id.* p. 25, 44.  Furthermore, training "multiple times a year" on the use of $P_2S_5$ and the method of monitoring included information that monitoring and

---

[2]Document filed out of order with the first page after the second page of the MSDS.

use of respiration protection were required because hydrogen sulfide could form once a drum was opened. *Id.* p. 15, 34.

The plaintiffs do not dispute the facts alleged by the defendant, but contend these facts are insufficient to allow the defendant to present evidence at trial about the failure to use air monitoring or respirators. Specifically, the plaintiffs argue such evidence is speculative and would confuse the jury, particularly in light of the fact that lethal quantities of toxic hydrogen sulfide gas accumulated in the headspace of the sealed $P_2S_5$ drums. **See** Filing No. 83 - Plaintiffs' Brief p. 2 (**citing** Filing No. 84 - Ex. 8[3] Terracon Jan. 8, 2004 Report § 3.5 p. 13-15). Furthermore, the plaintiffs state neither the MSDS nor the defendant's written training materials for $P_2S_5$ use warns of the possibility of hydrogen sulfide existing in the headspace of the drums, either at the time of purchase or thereafter. *Id.* p. 3. Additionally, a previous MSDS provided cautioned to keep the drums dry and warned about "[c]ontact with water or moist air," yet this warning was not present in the MSDS the defendant provided to Clean Harbors. *Id.* p. 3-4 (**citing** Filing No. 84 - Ex. 7 Sager Depo. p. 108).

The following facts are not in dispute for purposes of this motion. Four workers participated in the ash fixation process on June 27, 2003. **See** Filing No. 79 - Defendant's Brief p. 1; **see also** Filing No. 80 - Plaintiffs' Brief p. 3-8. Mr. Wheeland was one of the four workers and was located on the third level of the platform changing 55 gallon drums of $P_2S_5$ for a chute system which traveled down to the second level. *Id.* Mr. Barrett and two others were located on the level below Mr. Wheeland. *Id.* When Mr. Barrett collapsed his co-workers helped him out of the area. *Id.* Mr. Wheeland was later found lying on the floor of the third level. *Id.* Mr. Wheeland was transported to the hospital in Kimball, Nebraska where he died shortly after his arrival. *Id.* Mr. Wheeland's autopsy report stated his death was "accidental . . . with contributing factors of underlying heart disease" relative to exposure to $P_2S_5$ "and/or its decompositional elements." *Id.*; Filing No. 58, p. 15 Ex. A - Autopsy Report p. 2.

---

[3] The index of evidence lists the exhibit as Exhibit 8, however an exhibit label on the documents says Exhibit 5.

**ANALYSIS**

Evidence is excluded on a motion *in limine* "only when evidence is clearly inadmissible on all potential grounds." *Hawthorne Partners v. AT & T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). The *Hawthorne Partners* court continued:

> This court has the power to exclude evidence *in limine* only when evidence is clearly inadmissible on all potential grounds. . . . Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context. . . . Denial of a motion *in limine* does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded.

*Hawthorne Partners*, 831 F. Supp. at 1400-01 (citations omitted). Furthermore, the Eighth Circuit has noted "[e]videntiary rulings made by a trial court during motions *in limine* are preliminary and may change depending on what actually happens at trial." *Walzer v. St. Joseph State Hosp.*, 231 F.3d 1108, 1113 (8th Cir. 2000) (**citing** *Luce v. United States*, 469 U.S. 38, 41 (1984)). Finally, the *Hawthorne Partners* court noted: "[t]he court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion *in limine*." *Hawthorne Partners*, 831 F. Supp. at 1401.

**A.    Defendant's Motion *in Limine***

The defendant seeks to preclude the plaintiffs from using any pleading, testimony, remarks, questions or argument which might inform the jury of the following facts:

> 1.    Mr. Wheeland collapsed and died on June 27, 2003, while on the job at Clean Harbors in Kimball, Nebraska.
> 2.    The estate of Mr. Wheeland filed a wrongful death action against the defendant in the United States District Court for the District of Nebraska as a result of the incident which occurred on June 27, 2003.
> 3.    The estate of Craig Wheeland and the defendant settled the wrongful death action.

**See** Filing No. 77 - Motion p. 1. The defendant filed a brief (Filing No. 79) and an index of evidence (Filing No. 78[4]) in support of its motion. The plaintiffs filed a brief (Filing No. 80) and an index of evidence (Filing No. 81) in opposition to the defendant's motion. The defendant filed a brief (Filing No. 87) in reply.

The plaintiffs do not contest the second portion of defendant's Motion *in Limine* having to do with Mr. Wheeland's widow filing a lawsuit against the defendant; nor do they contest the third portion having to do with the settlement of Mr. Wheeland's widow's lawsuit against the defendant. **See** Filing No. 80 - Brief p. 1 n.1. Accordingly, the court will grant the defendant's Motion *in Limine* with respect to the second and third portions of the motion; and the plaintiffs will not mention or develop in evidence any facts surrounding action taken by Mr. Wheeland's estate against the defendant.

The defendant argues informing the jury about Mr. Wheeland's death would be irrelevant, improper and unduly prejudicial to the defendant. The defendant argues the plaintiffs have no causation evidence linking Mr. Wheeland's and Mr. Barrett's injuries. Specifically, the defendant asserts the plaintiffs have not designated an expert to testify as to the cause of Mr. Wheeland's death. **See** Filing No. 79 - Brief p. 2. As such, the defendant argues the plaintiffs can only rely on the autopsy report, which the defendant also argues is inadmissable hearsay. *Id.* In any event, the autopsy report initially stated Mr. Wheeland died of natural causes. **See** Filing No. 58, p. 15 Ex. A - Autopsy Report p. 3. However, the autopsy report was amended to reclassify the manner of death "as an accidental death with contributing factors of underlying heart disease." *Id.* p. 2. The stated reason for reclassification was "information received concerning co-workers['] exposure to phosphorous pentasulfide and/or its decompositional elements." *Id.* Based on the text of the report, the defendant asserts it cannot support the plaintiffs' argument that Mr. Wheeland's (and by extension Mr. Barrett's) injuries were caused by exposure to hydrogen sulfide. **See** Filing No. 79 - Brief p. 2. Additionally, the defendant argues there are no eyewitnesses to Mr. Wheeland's death and no circumstantial evidence connecting the injuries of the two men. *Id.* Furthermore, the defendant argues evaluation of Mr.

---

[4]The defendant's index of evidence relies entirely on evidence previously filed with its Motion to Exclude Expert Opinion and Testimony (Filing No. 45). Such evidence is found at Filing Nos. 47, 48, and 49.

Wheeland's death must take into consideration that neither of the co-workers standing next to Mr. Barrett were injured. *Id.* p. 3.

For the reasons stated above, the defendant argues evidence of Mr. Wheeland's collapse is not relevant. However, if relevant and admissible, the defendant contends the evidence is highly prejudicial under Rule 403 of the Federal Rules of Evidence. **See** Filing No. 87 - Reply p. 3-6. The defendant asserts the jury may base a verdict on the tragedy of the events rather than on any scientific evidence linking the death to Mr. Barrett's injury. *Id.* p. 3. The defendant argues there is no evidence showing the events were substantially similar. *Id.* In particular, the defendant contends it would sustain undue prejudice because the plaintiffs' theory, that exposure to sulfide gas caused the injuries, suffers from the additional deficiency of failing to provide a scientific explanation for how the gas, in sufficient concentration, could travel from the drum to Mr. Wheeland and to Mr. Barrett. *Id.* p. 4. In contrast, the defendant's theory is that both Mr. Wheeland and Mr. Barrett suffered injury due to exposure to $P_2S_5$ dust. *Id.*; **see also** Filing No. 48 - Ex. C Dr. Fox Aff. ¶ 10; Filing No. 58-2 p. 255 - Ex. V Dr. Fox Report p. 11-5. Finally, the defendant argues allowing the evidence would force the parties to litigate the cause of Mr. Wheeland's death. **See** Filing No. 87 - Reply p. 4-5.

The plaintiffs contend Mr. Wheeland's coincident toxic exposure and death is inextricable from Mr. Barrett's toxic exposure. **See** Filing No. 80 - Plaintiffs' Brief p. 9. Through the doctrine of *res gestae*, the plaintiffs contend a jury is entitled to hear the circumstances and background of their allegations. *Id.* Specifically, the plaintiffs seek to establish the context in which Mr. Barrett collapsed and suffered injury. *Id.* Furthermore, the plaintiffs contend Mr. Wheeland's coincident toxic exposure and death is meaningfully similar to the circumstances of Mr. Barrett's toxic exposure. *Id.* The plaintiffs also argue they should be allowed to provide the information in response to the defendant's allegations regarding neuropsychological deficits. *Id.* p. 10. Finally, the plaintiffs argue the two incidents are similar enough that evidence of Mr. Wheeland's death can be used to rebut many of the defendant's arguments. *Id.* p. 10-12.

Generally, in a products liability action, "evidence of similar incidents may be relevant to prove the magnitude of the danger, the lack of product safety, and causation."

*Arabian Ag. Servs. Co. v. Chief Indus., Inc.*, 309 F.3d 479, 485 (8th Cir. 2002). It is unclear at this time the extent to which the plaintiffs will be able to show the cause of Mr. Wheeland's death is similar to the cause of Mr. Barrett's injuries. However, the evidence of the fact of Mr. Wheeland's collapse and death is interrelated with the events on June 27, 2003, impacting Mr. Barrett. Further, the defendant's own expert opines both men were injured by the same cause, $P_2S_5$ dust. Accordingly, the evidence before the court suggests there may still be some casual connection between the causes of Mr. Wheeland's death and Mr. Barrett's injuries. Even if this cause is different from the plaintiffs' theory of the case, the defendant fails to show the evidence related to Mr. Wheeland's death is clearly inadmissible on all potential grounds. The defendant also fails to show the probative value of the evidence is outweighed by danger of unfair prejudice. However, the court will entertain objections on the topic as they arise at trial. Accordingly, with regard to evidence about Mr. Wheeland's collapse and death on June 27, 2003, while on the job at Clean Harbors, the defendant's motion will be denied without prejudice.

### B.     Plaintiff's Motion *in Limine*

The plaintiffs seek to preclude the defendant from introducing evidence or argument at trial relating to:

> 1. The absence of air quality monitors in the ash building of Clean Harbors on June 27, 2003.
> 2. The fact that Mr. Barrett was not wearing a supplied-air respirator on June 27, 2003.
> 3. The use and discontinuation of use of air quality monitors by Clean Harbors' workers handling $P_2S_5$.

**See** Filing No. 82 - Motion p. 1. The plaintiffs filed a brief (Filing No. 83) and an index of evidence (Filing No. 84) in support of their motion. The defendant filed a brief (Filing No. 88) and an index of evidence (Filing No. 89) in opposition to the plaintiffs' motion. The plaintiffs did not file a reply brief.

The plaintiffs contend any evidence having to do with the above-mentioned facts relate to defenses of contributory negligence, whereas the only claim in this matter is one for strict liability. **See** Filing No. 82 - Motion p. 1. In addition, the plaintiffs allege this evidence is speculative in nature. *Id.* p. 1-2. Finally, the plaintiffs allege this evidence is

likely to confuse and mislead the jury from the elements of, and proper defenses to, the plaintiffs' strict liability claim. *Id.* p. 2. Specifically, the plaintiffs argue the defendant never warned or instructed the plaintiffs to use air monitors. **See** Filing No. 83 - Plaintiffs' Brief p. 4-5. The plaintiffs allege it was Clean Harbors who developed a safety plan incorporating air monitoring in 1997. *Id.* (**citing** Filing No. 84 - Ex. 3 June 19, 1997 Plan p. CH2584). However, after use with the chute system, Clean Harbors superseded the plan with standard operating procedures (SOP), which did not incorporate air monitoring. *Id.* p. 5-7 (**citing** Filing No. 84 - Ex. 4 Nov. 16, 2000 Draft - Lead Fixation). Similarly, the SOP did not require a supplied-air respirator. *Id.* p.7. In any event, the plaintiffs contend these facts are not relevant to the strict liability claim or to the defendant's liability. *Id.* Further, the plaintiffs argue the jury would be confused or distracted by such evidence which would relate, at best, to a contributory negligence claim. *Id.*

The defendant contends the evidence the plaintiffs seek to exclude is relevant to assumption of risk and product misuse defenses. **See** Filing No. 88 - Defendant's Brief p. 2. These defenses rely on facts about what Mr. Barrett knew and the importance of air monitoring and respirator use. *Id.* Similarly, the defendant argues Mr. Barrett's knowledge about the dangers of the product is relevant to the plaintiffs' claim that the defendant is liable for its "failure to provide adequate warnings to foreseeable users of its drums." *Id.* p. 9 (**citing** Filing No. 19 - Second Amended Complaint p. 5 ¶ 13). Accordingly, the defendant contends it must show the plaintiffs' action (or inaction) caused the harm, rather than the failure of the defendant to provide adequate warnings. *Id.*

Assumption of risk and product misuse defenses are defenses available to a defendant on a strict liability claim. **See** *Shipler v. General Motors Corp.*, 710 N.W.2d 807, 826 (Neb. 2006); **see also** *Jay v. Moog*, 652 N.W.2d 872, 880, 882 (Neb. 2002). These defenses are different from "contributory negligence." **See** *Shipler*, 710 N.W.2d at 826; *Jay*, 652 N.W.2d at 880. The assumption of the risk doctrine applies a subject standard and includes the elements of whether "the plaintiff (1) knew of the specific danger, (2) understood the danger, and (3) voluntarily exposed himself or herself to the danger that proximately caused the damage." *Jay*, 652 N.W.2d at 880-81. As a related concept, "[f]ailure to follow plain and unambiguous instructions [from the manufacturer or

8

supplier] is a misuse of the product." *Id.* 883 (**citing *Erickson v. Monarch Indus.*, 347 N.W.2d 99, 109 (Neb. 1984)**). The evidence presented by the defendant in opposition to the plaintiffs' motion may be relevant to whether the plaintiffs assumed certain risks associated with the use of the $P_2S_5$ drums and/or misused the product by failing to heed particular warnings made by the defendant. Whether the parties have conflicting evidence on these facts is immaterial at this time.

Finally, based on the plaintiffs' claims as explicitly stated in the complaint, the plaintiff must show, *inter alia*, a defect in the product, specifically failure to provide adequate warnings, was a proximate cause of the injury and the product was being used "in the way and for the general purpose for which it was designed and intended." *Stahlecker v. Ford Motor Co.*, 667 N.W.2d 244, 249 (Neb. 2003). In defense of the plaintiffs' allegations, the defendant may present admissible evidence about a cause of the injury other than any alleged failure to provide adequate warnings. The plaintiffs' knowledge of available safety procedures and the exercise (or not) of such procedures in association with the use of $P_2S_5$ drums may be relevant to causation. Accordingly, the plaintiffs fail to show the evidence they seek to exclude is clearly inadmissable on all potential grounds. For all of the foregoing reasons, the plaintiffs' motion will be denied, without prejudice.

**IT IS ORDERED:**

1. The defendant's Motion *in Limine* (Filing No. 77) is granted in part and denied in part. The defendant's motion is granted with respect to the second and third portions of the motion regarding any facts surrounding action taken by Mr. Wheeland's estate against the defendant. Otherwise, the defendant's motion is denied, without prejudice subject to the appropriate objections at trial.

2. The plaintiffs' Motion *in Limine* (Filing No. 82) is denied, without prejudice subject to the appropriate objections at trial.

DATED this 13th day of March, 2009.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge